UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 14-13612-RGS


ADAMSON INDUSTRIES, INC.

v.

FAPS, INC.


MEMORANDUM AND ORDER

ON DEFENDANT'S MOTION TO DISMISS


December 15, 2014


STEARNS, J.

 Adamson Industries, Inc. (Adamson), bought a 1980 Hooper Rolls Royce (Rolls) "from a private dealer located in Germany using RM Auctions as an intermediary to negotiate the purchase price and handle the transportation logistics." Compl. ¶ 4. "Adamson and RM Auctions agreed that RM Auctions would arrange for the [Rolls] to be shipped in a container to Port Newark, New Jersey, and cleared through United States Customs." *Id.* ¶ 5. Defendant FAPS, Inc., is a New Jersey corporation, with its principal (and sole) place of business in Port Newark, New Jersey. *See*

Vizzone Aff. ¶¶ 4-5.  FAPS leases a marine terminal from the Port Authority of New Jersey from which it operates an automobile import and export business.  *Id.* ¶ 5.  Adamson hired FAPS (then an Adamson customer) to take delivery of the Rolls after it cleared U.S. Customs and to store it at the New Jersey terminal "until such time that the parties could coordinate the delivery of the [Rolls] to Haverhill, Massachusetts."[1]  Compl. ¶ 6.

During the ocean crossing, the Rolls sustained body damage.  RM Auctions hired FAPS to make the repairs and do some additional refinishing work.  *Id.* ¶ 8.  On July 14, 2011, RM Auctions paid FAPS $23,975 for the work.  In October of 2012, while in storage at Port Newark terminal, the Rolls was heavily damaged in the wake of Hurricane Sandy. Steven Contarino, Treasurer, Secretary, and a Director of Adamson, obtained an estimate of $117,489.36 from Palma Auto Repair in Audubon, New Jersey, as the cost of restoring the Rolls to working order. (A copy of the estimate dated January 7, 2014 is attached to the Complaint).  Adamson demanded that FAPS pay for the damage to the Rolls, and alleges that, to date, "[FAPS] has failed, refused, or neglected to make payment."  *Id.* ¶ 11.

---

[1] Between September of 2008 and October of 2009, FAPS "purchased motor vehicle parts and accessories from Adamson." Contarino Aff. ¶ 4.

Adamson filed this Complaint against FAPS on September 11, 2014, asserting claims for breach of contract (as an alleged third-party beneficiary of the agreement between FAPS and RM Auction) and common-law negligence. FAPS moves to dismiss for lack of personal jurisdiction, improper venue and (in the alternative), forum non conveniens. Adamson opposes dismissal on jurisdictional grounds citing the doctrine giving preference to a plaintiff's choice of forum and FAPS' "undisputed admission that it does business in Massachusetts." In support of its claim that FAPS does business in Massachusetts, Adamson relies on a letter written by FAPS director Earl Vizzone to FAPS' insurer requesting coverage for the Hurricane Sandy damage to the Rolls.

> Adamson is an upfitter for emergency vehicles and is used by FAPS for parts and technical consultation when FAPS provides quotations for vehicles that are being fitted for military, fire or police use for the export markets we serve. Over the past 7 years [Adamson] has assisted FAPS in no less than 15 requests for quotes for these services. We were successful in 2 bids for Ford Motor Company for Export Vehicle's and Adamson provided the parts and installation consultations. In addition they have provided FAPS the parts for our own security vehicles, which include sirens, light bars, radios, and other police equipment that we have used over the years.

Opp'n Mem. at 5. Alternatively, Adamson claims that "FAPS has caused [Adamson] a tortious injury in the Commonwealth of Massachusetts by failing to exercise due care in storing the [Rolls] and refusing to pay to

repair damage sustained while the [Rolls] was in FAPS' custody in New Jersey." *Id.*

## DISCUSSION

The burden is on Adamson to show a prima facie case that this court has personal jurisdiction over FAPS. *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990). "The proper exercise of specific in personam jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994); *see also Burger King Corp v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (due process constraints); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) ("fair play and substantial justice").

Adamson relies on sections (a) and (d) of the Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, as the jurisdictional hooks over FAPS. Chapter 223A states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by agent, as to a cause of action in law or equity arising from the person's (a) transacting business in

this commonwealth; . . . [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." *See also Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (noting that the "Massachusetts long-arm statute is coextensive with the limits allowed by the Constitution."). In support of the section (a) prong, Adamson recites its furnishing of parts and quotations *to* FAPS. It must be remembered that this lawsuit arises out of property damage to the Rolls while in storage in New Jersey, and not from FAPS' transaction of business *in* Massachusetts. The alleged facts set out in Adamson's Complaint describe damage to the Rolls "after the Vehicle cleared U.S. Customs [and] FAPS pick[ed] up the Vehicle and store[d] the Vehicle at its place of business [in Port Newark, New Jersey] until such time that the parties could coordinate the delivery of the Vehicle to Haverhill, Massachusetts." Compl. ¶ 6. There are no allegations that FAPS sold goods or provided services in Massachusetts (or contracted to personally deliver the Rolls to Adamson in Massachusetts).

Turning to the due process analysis, the constitutional focus "is not the [parties'] relationship itself, but the content of the parties' interactions

that creates constitutionally significant contacts. Thus, '[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.'" *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 290 (1st Cir. 1999), quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). To satisfy the "minimum contacts" requirement, the relationship "must arise out contacts that the 'defendant *himself*' creates with the forum State. . . . [T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis in original).

Adamson contends only that FAPS has purchased goods *from* Adamson, a Massachusetts business, and that FAPS has a website that advertises its auto import/export facility that is accessible in Massachusetts. Adamson does not allege that the FAPS website served as the basis of the parties' interactions or as the vehicle through which FAPS agreed to take delivery of the Rolls. *See Telco Commc'ns, Inc. v. N.J. State Firemen's Mut. Benevolent Ass'n.*, 41 Mass. App. Ct. 225, 232-233 (1996)

(noting reluctance to extend the Long Arm Statute to an out-of-state purchaser of Massachusetts goods and services for fear of driving business out of the state); *New Hampshire Ins. Guar. Ass'n v. Markem Corp.*, 424 Mass. 344, 350 (1997) (same, purchaser of insurance from Massachusetts company).  In *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35-36 (1st Cir. 2010), the First Circuit also addressed the question of whether an interactive website, located outside the forum state and directed at the residents of every state, may by itself fulfill the requirement of purposeful availment. *Id.* at 35-36. The Court held that something "more" is required to support the exercise of personal jurisdiction based on website activity, as the proper focus is "on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." *Id.* at 35.  The Court found that personal jurisdiction was lacking over the defendant because its website was available to anyone with Internet access, did not target forum state residents in particular, and any advertising on it was no more likely to solicit business in the forum state than anywhere else. *Id.*  The same analysis applies here.[2]

---

[2]  With regard to the second part (d) prong, it is evident that any tortious injury to the Rolls occurred in New Jersey and not in the Commonwealth of Massachusetts as the Long-Arm Statute requires.

FAPS also challenges Adamson's choice of venue. Pursuant to the federal venue statute, 28 U.S.C. 1391,

> [a] civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

FAPS is a corporate resident of New Jersey. The events that give rise to this action - damage to Adamson's Rolls - occurred in New Jersey. New Jersey is the obvious and proper venue for this action.

## ORDER

For the foregoing reasons, FAPS' motion to dismiss for lack of personal jurisdiction and improper venue is <u>ALLOWED</u>. The Clerk will enter a dismissal of the Complaint without prejudice, to be refiled, if Adamson desires, in the state or federal court in New Jersey. The Clerk will close the Massachusetts-filed case.

SO ORDERED.

s/Richard G. Stearns

UNITED STATES DISTRICT JUDGE